UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTIMETRIK CORP.,

    Plaintiff,

v.

USCIS,

    Defendant.
_____/

Case No. 2:18-cv-11754

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11]**

On June 4, 2018, Plaintiff Altimetrik Corp. ("Altimetrik") filed a complaint and alleged that Defendant United States Citizenship and Immigration Services ("USCIS") arbitrarily and capriciously denied its petition for an H-1B visa on behalf of its employee, Aravind Kumar Ravindran. ECF 1. On October 29, 2018, Altimetrik filed a motion for summary judgment. The Court reviewed the briefs and finds that a hearing is unnecessary. *See*. E.D. Mich. LR 7.1(f). For the reasons below, the Court will deny the motion.

**BACKGROUND**

Altimetrik is a "worldwide" "software and engineering development company." ECF 1, PgID 1. In December 2017, Altimetrik filed a petition for an H-1B visa on behalf of Ravindran. *Id.* at 2. Altimetrik then hired Ravindran, and Ravindran began working as a full-time employee for Altimetrik in its Princeton, New Jersey office. *Id.*; ECF 10-1, PgID 88. In January 2017, USCIS requested additional evidence from Altimetrik to support its petition for Ravindran's H-1B visa. ECF 1, PgID 2. In

1

February 2017, Altimetrik provided additional evidence, and in March 2017, USCIS denied the petition. *Id.* at 2–3. USCIS held that Altimetrik failed to meet its "burden of proving, by a preponderance of the evidence, eligibility for the benefit sought." ECF 10-1, PgID 71 (USCIS decision denying Altimetrik's petition).

USCIS found that the provided evidence demonstrated only one project to which Altimetrik had assigned Ravindran, and that the project had already expired. *See id.* at 70. USCIS acknowledged that Altimetrik provided a statement of work for an additional project that would last until September 1, 2018—a date that had not yet passed. *Id.* But USCIS noted that Altimetrik provided no evidence that Ravindran was assigned to the second project, and emphasized that the second project's statement of work listed only two roles to be filled by Altimetrik's Princeton office—neither of which matched Altimetrik's title for or description of Ravindran's role. *Id.* USCIS explained that it was "unable to conclude that" Altimetrik met its burden because "of the inconsistencies in the record." *Id.* at 71.

**STANDARD OF REVIEW**

A district court must "hold unlawful and set aside agency actions, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2). The scope of review under § 706(2)(A) is narrow. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). "A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal quotations and citation omitted). A reviewing court should

set aside an agency decision that relies on factors other than those Congress intended the agency to consider, "entirely fail[s] to consider an important aspect of the problem," provides an explanation that is contradicted by the evidence, "or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1004 (6th Cir. 1995) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

A court reviews an agency's factual determinations "[u]nder the substantial evidence standard," determining only "whether those determinations are supported by substantial evidence on the record as a whole." *Steeltech, Ltd. v. United States Envtl. Prot. Agency*, 273 F.3d 652, 657 (6th Cir. 2001). A determination that "there was substantial evidence in the record for a result other than that arrived at by the [agency]" is insufficient. *Id.*

## DISCUSSION

An H-1B visa allows "an alien" to come "temporarily to the United States to perform services . . . in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). A "specialty occupation" is "an occupation that requires—(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). A position must satisfy one of four criteria to qualify as a specialty occupation: (1) the normal, minimum, entry-level requirement for the position is a bachelor's degree or higher,

3

(2) the analogous positions at similar organizations across the industry require a bachelor's degree or higher, (3) the specific employer "normally requires a degree or its equivalent for the position," or (4) the duties to be performed "are so specialized and complex that knowledge required to perform the duties is usually associated with" needing a bachelor's degree or higher. 8 C.F.R. § 214.2(h)(4)(iii)(A).

To determine whether a position qualifies as a specialty occupation, "USCIS does not take the title of the position provided by the petitioning employer at face value." *Altimetrik Corp. v. Cissna*, No. 18-10116, 2018 WL 6604258, at *4 (E.D. Mich. Dec. 17, 2018) (citing *Fast Gear Distrib., Inc. v. Rodriguez*, 116 F. Supp. 3d 839, 846 (E.D. Mich. 2015)). Rather, USCIS "considers the job duties of the offered position along with the petitioning employer's business operations to make a determination if the position actually requires skills of someone with a bachelor's degree." *Fast Gear*, 116 F. Supp. 3d at 846. But here, USCIS found that Altimetrik failed to provide sufficient evidence to carry its burden of demonstrating, by a preponderance of the evidence, that Ravindran was offered a position with duties that required the skills of someone with a bachelor's degree. *See* ECF 10-1, PgID 71. The decision was not arbitrary or capricious, or an abuse of USCIS's discretion.

USCIS explained the evidence that Altimetrik provided and why that evidence was internally inconsistent and insufficient. *Id.* at 68–71. USCIS noted that Altimetrik submitted evidence that Ravindran was assigned to only one project—the "MBFS Playground Pilot project"—and that Altimetrik's evidence indicated that the "project ended on January 31, 2018." *Id.* at 69. USCIS further expressed concern that

4

the statement of work that Altimetrik submitted for a second project included only two positions to be filled by Altimetrik's Princeton office, neither of which matched Ravindran's title or position description, and that Altimetrik did not provide any evidence that Ravindran was assigned to the second project. *Id.* at 70. Because Altimetrik's description of Ravindran's job duties did not align with any provided statement of work for an actual project Ravindran would be working on, USCIS reasonably concluded that the evidence was internally inconsistent. *Id.* As USCIS stated, Altimetrik provided insufficient evidence to establish by a preponderance of the evidence that Ravindran was hired to perform actual duties requiring the skills of someone with a bachelor's degree or higher. *See id.*

Altimetrik's objection to USCIS's decision centers on its assertion that the decision "claims that it does not use a title to determine specialty occupation and that it must evaluate the duties to be performed, but . . . fails to make any discussion or analysis of the job duties" and "arbitrarily and capriciously ignores the job description provide by Altimetrik." ECF 11, PgID 302. But Altimetrik's objection to the decision misunderstands the decision. USCIS did not "ignore[]" Altimetrik's description of Ravindran's job. USCIS's decision looked at all of the evidence that Altimetrik provided regarding Ravindran's position and explained that Altimetrik did not provide any evidence of an unexpired project for which Ravindran would perform the duties that Altimetrik listed as his job duties. *See* ECF 10-1, PgID 69–71.

Altimetrik titled Ravindran's position "Technical Lead" and provided a description of his job duties. *Id.* at 91–92. But Altimetrik provided evidence that

5

Ravindran was assigned to only one project—a project that its evidence also indicated expired prior to the USCIS decision. *See id.* at 191 (affidavit from Altimetrik's "HR Generalist" Lydia Keci, listing the project Ravindran is assigned to as "MBFS Playground Pilot"); *Id.* at 118 (statement of work between MBFS and Altimetrik noting that "[a]ny continued use of the virtual Playground beyond the end of January 2018 will be separately contracted."). And although Altimetrik provided a statement of work for a second project with MBFS, it provided no evidence that Ravindran was assigned to the second project. The statement of work for the second project does not include a position to be filled through Altimetrik's Princeton office that matches Altimetrik's own description of Ravindran's job. *Compare id.* at 270 (statement of work for Altimetrik's second project with MBFS, providing that Altimetrik's Princeton office will supply only a "Senior developer" and an "Overall Governance" employee, and including a brief description of each position) *with id.* at 91–92 (listing Ravindran's job title as "Technical Lead" and providing a position description). USCIS reasonably concluded that there were "inconsistencies in the record" which Altimetrik had failed to "resolve . . . by independent objective evidence." *Id.* at 70.

Altimetrik also argues that USCIS mistakenly assumed that it was not the entity responsible for Ravindran's employment. *See* ECF 11, PgID 304–05; ECF 14, PgID 349–50. But Altimetrik's characterization of USCIS's decision is not supported by the text of the decision. Although USCIS initially requested additional evidence from Plaintiff to demonstrate its "right to control" Ravindran as its employee, ECF 10-1, PgID 183, USCIS did not base its ultimate denial on a determination that

6

Altimetrik failed to establish adequate control over Ravindran to qualify as his employer, *see id.* at 68–71. USCIS cited *Defensor v. Meissner*, 201 F.3d 384 (5th Cir. 2000) for the proposition that "USCIS must examine the ultimate employment of the alien and determine whether the position qualifies as a specialty occupation" and nothing more. *Id.* at 69. USCIS's elaboration after its citation to *Defensor* clarifies that it is not asserting that Ravindran's ultimate employment is with an entity other than Altimetrik, but rather that USCIS is not satisfied that Ravindran's "ultimate employment"—meaning the job functions he will actually perform and not just his job title—qualifies as a specialty occupation. *Id.* And although *Defensor* is not the most relevant authority for the proposition, courts do look at a proposed beneficiary's actual job duties rather than the job description alone in order to determine whether a job qualifies as a specialty occupation. *See Altimetrik Corp.*, 2018 WL 6604258, at *4 (quoting *Fast Gear*, 116 F. Supp. 3d at 846).

USCIS's decision does not question whether Altimetrik adequately controls Ravindran. The decision was based solely on Altimetrik's failure to provide adequate evidence that Ravindran will be performing job duties that qualify as a specialty occupation. The Court will not graft an entire line of reasoning onto USCIS's decision that the decision does not mention. And USCIS's conclusion that "[i]nasmuch as you are not a firm needing computer related positions to complete your own software projects, the record does not show sufficient work to establish eligibility for the benefit sought" is not an assertion that the MBFS project is not Altimetrik's own project or that Altimetrik employees will not be working on the project from Altimterik's office.

7

ECF 10-1, PgID 71. Read in conjunction with the rest of the USCIS decision, USCIS's reference to Altimetrik's "own software projects" refers to completely internal projects for which Altimetrik would create software for its own personal use, in contrast to projects like the two MBFS projects, for which Altimetrik contracts with another company to create software for that company. The statement in no way accuses Altimetrik of lacking control over its contracted projects.

Finally, Altimetrik's appeal to its promotional materials is unpersuasive. Altimetrik provided promotion material to USCIS about its company. *See* ECF 10-1, PgID 106–15. The promotional materials discuss various projects in which Altimetrik was engaged. *Id.* at 111–15. But the materials merely include general descriptions of the projects. *Id.* There is no indication whether the projects are ongoing (or were at the time of USCIS's decision), whether Altimetrik's Princeton office is involved in the projects, or whether there are open positions on the project for Ravindran to fill that involve qualifying specialty occupation work.

USCIS reasonably applied the relevant law and determined that Altimetrik failed to establish by a preponderance of the evidence that Ravindran would be performing actual work for Altimetrik that would qualify his job as a specialty occupation. USCIS's decision conformed to the relevant law, was not arbitrary or capricious, and did not constitute an abuse of its discretion. The Court will therefore deny Plaintiff's motion for summary judgment and uphold the decision of USCIS.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for summary judgment [11] is **DENIED**.

**IT IS FURTHER ORDERED** that the decision of the USCIS is **UPHELD**.

This is a final order and closes the case.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 21, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 21, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager